UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 2 4 2015 ★

BROOKLYN OFFICE

------------------------------------------------------------------x

PATRICIA RAEBURN,

                          Plaintiff,

          -against-

DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT OF THE CITY OF NEW
YORK, THE CITY OF NEW YORK, SIMON
BONNANO and RAYMOND PYNN,

                          Defendants.

------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-4818 (SLT)(MDG)

**TOWNES, United States District Judge:**

Plaintiff Patricia Raeburn brings this employment discrimination action against her

employer, the Department of Housing Preservation and Development of the City of New York

("HPD"), the City of New York, and two HPD supervisors, Simon Bonnano and Raymond Pynn,

alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e

*et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and New

York State law. Defendants, all of whom are represented by the Corporation Counsel of the City

of New York, now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. For the

reasons stated below, the Court grants defendants' motions with respect to plaintiff's Title VII

and ADEA claims, declines to exercise supplemental jurisdiction with respect to the three state-

law claims, and dismisses this action without prejudice to pursuing those three claims in state

court.

## *BACKGROUND*

The following facts are drawn from plaintiff's Verified Complaint (the "Complaint"), the non-conclusory allegations of which are assumed to be true for purposes of this Memorandum and Order. Plaintiff is an African-American woman, who was 60 years old at the time she commenced this action in October 2010. Plaintiff has worked for defendant HPD, an agency of the City of New York, since 1988. Although plaintiff has worked in various capacities during her tenure at HPD, she has worked as an Inspector since approximately 2000.

In April 2004, plaintiff applied to work as a lead-paint inspector in HPD's lead paint section. Plaintiff was offered the position. However, when she called defendant Simon Bonnano—then the chief of HPD's Hooper Street, Brooklyn, office—on or about September 1, 2004, to announce that she was preparing to report for duty, Bonnano advised plaintiff not to take the position, stating that the job required inspectors to carry ladders. Plaintiff disregarded Bonnano's comments and reported to work at the Hooper Street office nonetheless. She also reported Bonnano's comments, which she interpreted as implying that a middle-aged woman would not be able to perform the job of lead-paint inspector, to HPD Chief William Tompson as discriminatory.

Although plaintiff does not allege that Tompson took any action on her complaint, plaintiff alleges, on information and belief, that Bonnano came to learn of plaintiff's complaint to Tompson and "decided to create a hostile, discriminatory and retaliatory environment for Plaintiff when she reported for duty at the Hooper Street office." (Complaint, ¶ 17). Plaintiff alleges that she "put up with the hostile and discriminatory work environment ... for well over a

year and [a] half from the commencement of her new job ...." (*Id.*, ¶ 18). However, plaintiff does not allege what, if any actions, Bonnano took to create a hostile work environment.

Indeed, the Complaint does not allege any specific hostile or discriminatory acts which took place in the more than 21-month period between September 1, 2004, and June 8, 2006. On the latter date, plaintiff and a co-worker, Patrick Roberts, "went to the field" to inspect three buildings. (*Id.*, ¶ 19). En route to the office after completing these inspections, Roberts spent approximately an hour in a retail store, leaving plaintiff to wait in the car they shared. Believing that Roberts had "absconded for an hour of work time" in "violation of HPD policy" (*id.*), plaintiff reported Roberts' actions to their supervisor, defendant Raymond Pynn.

Pynn not only failed to take action on plaintiff's complaint, but excoriated plaintiff for making it. According to plaintiff, Pynn summoned her into the men's changing room, where he "removed his shoes, banged them on the table and yelled at Plaintiff to leave his 'best man' alone." (*Id.*, ¶ 20). Plaintiff implies that Pynn's decision to berate her in the men's changing room, rather than in his office, and his failure to even investigate Robert's alleged misconduct was "motivated by Pynn's discriminatory and hostile attitude toward Plaintiff as a woman employee." (*Id.*, ¶ 21).

While plaintiff alleges, upon information and belief, that Roberts was never disciplined, plaintiff does not allege that Pynn took any further actions against her. According to the Complaint, the next incident involving plaintiff did not occur until sometime in or after March 2007, following the hiring of a young white male employee, Richard Kogan. Kogan was assigned to a computer which was shared by plaintiff and other employees.

Shortly after he arrived at the Hooper Street office, Kogan began complaining that plaintiff powered down the shared computer after using it. Although the computer was also used by other employees, any one of whom could have powered it down, Bonnano confronted plaintiff with Kogan's accusation. Plaintiff denied having powered down the computer, stating that she only "logged off the computer as policy required." (*Id.*, ¶ 24). Bonnano apparently credited Kogan and "chose to disbelieve Plaintiff." (*Id.*).

On or about April 3, 2007, while working in the field, plaintiff received a radio call from Bonnano. He screamed at her, demanding to know why the computer had been powered down again. Plaintiff "found this call both offensive and unwarranted not only because ... Bonnano called her in the course of her field assignment to upbraid her about a matter that could have awaited her return to the office, but also because he had once again chosen to believe the false claims of Kogan, Plaintiff's earlier denials notwithstanding." (*Id.*, ¶ 26).

Upon returning to the office, plaintiff found a note on the computer she shared with Kogan. The note instructed plaintiff not to sign onto that computer, but to use another computer which was assigned to another African-American employee. Plaintiff does not allege that the new computer was in any way inferior to the computer she shared with Kogan, but asserts that the decision to reassign her to a new computer was "retaliation and harassment." (*Id.*, ¶ 28).

On April 7, 2007, Pynn summoned plaintiff to the men's changing room, where he served her with a disciplinary notice charging her with failure to report an arrest. Two days later, plaintiff, who had never been arrested, went to the office of HPD's Inspector General and told an investigator that the charge was spurious. Plaintiff was nonetheless required to appear at a proceeding to answer the "defamatory charge." (*Id.*, ¶ 32).

4

At that proceeding on April 11, 2007, plaintiff learned that the charge against her had been changed to "use of profane language toward co-workers." (*Id.*, ¶ 33). That charge was based on an e-mail from Roberts dated April 4, 2007, which was allegedly authored by three other witnesses to the profanity. Plaintiff alleges, however, that Robert was the sole author of the e-mail.

Plaintiff stated that she wanted to consult an attorney and, at her request, the proceedings were adjourned. Approximately one week later, Dawn Naidu-Walton of HPD's Inspector General's Office called plaintiff and offered her a "job transfer." (*Id.*, ¶ 35). According to plaintiff, Naidu-Walton "acknowledged that Plaintiff was working in a hostile environment." (*Id.*). Plaintiff declined the transfer because she believed that "it was incumbent upon HPD to change such 'hostile environment,' instead of simply transferring Plaintiff ...." (*Id.*).

The Complaint alleges that, on or about May 9, 2007, plaintiff filed a charge of sex, age and race discrimination (hereafter, the "Charge") with the U.S. Equal Employment Opportunity Commission (the "EEOC"). On July 20, 2010, the EEOC issued a "right-to-sue letter." Plaintiff retained counsel, who commenced this action by filing the Complaint on October 20, 2010.

### *The Complaint*

The Complaint names four defendants: the HPD, the City of New York, Simon Bonnano, and Raymond Pynn. The Complaint alleges that the Hooper Street office was already "hostile to and discriminatory against its female employees" when plaintiff began working there because it had a men's changing room, but no similar facility for plaintiff and the two other female employees. (*Id.*, ¶ 18). However, the Complaint also alleges that "Bonnano decided to create a hostile, discriminatory and retaliatory environment for Plaintiff when she reported for duty at the Hooper Street office" in disregard of his advice not to do so. (*Id.*, ¶ 17).

Although the Complaint alleges that plaintiff "put up with the hostile and discriminatory work environment in the office without complaint for well over a year and [a] half from the commencement of her new job in or about September ... 2004," (*id*, ¶ 18), the pleading alleges only three discriminatory incidents which occurred after plaintiff began work as a lead-paint inspector: Pynn's actions in response to her reporting Robert's misconduct in June 2006; Bonnano's actions in response to Kogan's complaints about the computer in the Spring of 2007; and the disciplinary charges against plaintiff in April 2007. With respect to the disciplinary charges, the Complaint alleges that plaintiff was charged with "failure to report an arrest" and "use of profane language," but does not allege what, if any, any adverse action plaintiff suffered as a result of these charges. In addition, while the Complaint conclusorily asserts that "HPD's agents have since continued to harass and retaliate against Plaintiff by causing her to be summoned before the HPD Disciplinary Unit on all manner of baseless, contrived, vague or convoluted charges," (*id.*, ¶ 36), the pleading does not allege facts relating to any of these other charges.

The Complaint alleges six "counts," the first three of which allege violations of federal statutes. The first two causes of action allege that plaintiff was subjected to sex and race discrimination, respectively, in violation of Title VII. The third cause of action alleges that "Plaintiff was subjected to discrimination on the basis of age in violation of [the] ADEA." (*Id.*, ¶¶ 46). The three other counts allege violations of state statutes. The fourth count alleges a claim pursuant to the NYCHRL, the fifth count advances a claim for intentional infliction of

emotional distress, and Count VI alleges a common-law claim for negligent supervision.

**Procedural History**

In November 2012—after lengthy delays occasioned by, among other things, the withdrawal of plaintiff's counsel—defendants filed a motion to dismiss the Complaint. That motion raised six points, the first and third of which relied on documents submitted in support of the motion by defendants' counsel. In the first point, defendants argued that plaintiff's Title VII and ADEA claims were barred by plaintiff's failure to commence her action within 90 days of the right-to-sue notice. In support of that argument, defendants introduced evidence that the EEOC had mailed plaintiff a right-to-sue notice on December 31, 2007, which related to a charge of discrimination which plaintiff had filed on or about May 9, 2007. Defendants did not contest the Complaint's allegation that a right-to-sue letter was received on July 20, 2010, but allege that this was the second of two right-to-sue letters which plaintiff received from the EEOC.

In the third point, defendants argued that the Court lacked subject-matter jurisdiction over plaintiff's Title VII and ADEA claims because the conduct giving rise to those claims was not alleged in the Charge. In support of that argument, defendant relied on Charge Number 520-2007-03090—a charge of discrimination signed by plaintiff on May 9, 2007, and filed with the EEOC on July 11, 2007. That charge related solely to the disciplinary proceeding commenced against plaintiff in April 2007, and made no mention of events which occurred previously.

Although plaintiff was no longer represented at the time she was served with defendants' motion to dismiss, she filed a *pro se* response dated October 23, 2012, entitled an "Answer to Motion to Dismiss." That document consisted of a six-page, sworn declaration, to which plaintiff attached excerpts from the HPD's Rules of Conduct and excerpts from an HPD

7

handbook entitled, "Supervisor's Duties & Responsibilities." The declaration contained a vague allegation that unspecified male supervisors had told an unspecified female employee to "suck my dick," and an argument suggesting that plaintiff made "management" aware of this allegation in a "complaint." In fact, the charge of discrimination signed by plaintiff on May 9, 2007 (the "Charge") contained no such allegation.

In a memorandum and order dated September 30, 2013, this Court noted that the first and third points of defendants' motion relied on matters outside of the four corners of the Complaint. *See Raeburn v. Dep't of Housing Pres. & Dev.*, No. 10-CV-4818 (SLT)(MDG), 2013 WL 5521235 (E.D.N.Y. Sept. 30, 2013). Accordingly, the Court converted the motion into a motion for summary judgment, directed plaintiff to re-serve the notice pursuant to Local Rule 12.1, and set a briefing schedule which afforded plaintiff the opportunity to file additional materials relevant to the motion. The Court advised plaintiff that such additional materials might include "an affidavit from Plaintiff clarifying whether she filed a second charge of discrimination with the SDHR and, if so, how that charge differed from the charge filed with the EEOC on May 9, 2007." *Id.*, 2013 WL 5521235, at *4.

In November 2013, plaintiff filed another sworn declaration. Although the document was entitled, "Answer," it made ten statements under penalties of perjury and in opposition to defendants' motion to dismiss. It stated, among other things, that plaintiff received "only one 90 day letter," and that she provided her attorney with a copy of this letter as soon as she received it. Answer sworn Nov. 12, 2013, ¶ 2.

On June 20, 2014, defendants filed a second motion to dismiss. However, after oral argument on July 30, 2014, that motion was withdrawn and defendants were granted leave to file

8

a third motion. That motion to dismiss or, in the alternative, for summary judgment was ultimately filed in December 2014. The Memorandum of Law in Support of that Motion ("Defendants' Memo") raises the same six points as the memorandum of law in support of the initial motion to dismiss. However, the arguments relating to Points I and III rely on additional documents contained in the Declaration of Gloria M. Yi dated October 17, 2014 (the "Yi Declaration"), and differ slightly from the arguments raised in support of the original motion.

### *The Instant Motion to Dismiss or, in the alternative, for Summary Judgment*

As in the initial motion to dismiss, Point I argues that plaintiff's Title VII and ADEA claims are barred because plaintiff failed to bring suit within 90 days of receiving a right-to-sue notice. Defendants concede that the EEOC issued two right-to-sue notices in this case—one dated December 31, 2007, and a second dated July 20, 2010—but argue that these notices related to identical charges of discrimination, both dated May 9, 2007, and filed on June 11, 2007. Defendants cite to several cases for the proposition that the 90-day deadline runs from the date that the first right-to-sue letter was received.

In Point II, defendants argue that Title VII and ADEA claims arising from incidents which occurred more than 300 days prior to the filing of the Charge must be dismissed as time-barred. Although the copies of the Charge which are attached to the Yi Declaration indicate that the Charge was filed with the EEOC on June 11, 2007, Defendants' Memo credits the Complaint's allegation that the Charge was filed on May 9, 2007, and assumes that the Charge was dual filed with the New York State Division of Human Rights (the "SDHR"). Defendants reason that Title VII and ADEA claims arising from the incidents which occurred prior to July 13, 2006—i.e., 300 days prior to May 9, 2007—must be dismissed.

In Point III, defendants argue that this Court does not have subject-matter jurisdiction over Title VII or ADEA claims alleging hostile work environment or retaliation. Defendants note that this Court only has jurisdiction to hear Title VII or ADEA claims that are either included in an EEOC Charge or based on conduct subsequent to that Charge which is reasonably related to that alleged in the EEOC Charge. Defendants note that the Charge which plaintiff filed with the EEOC relates solely to the disciplinary proceedings commenced in April 2007 and was, therefore, insufficient to put the EEOC on notice that plaintiff was claiming hostile work environment or retaliation.

Point IV of the Instant motion asserts that the Complaint fails to state a plausible claim for relief. First, defendants argue that the Complaint does not allege facts suggesting that plaintiff suffered an adverse employment action, one of the elements of a Title VII discrimination claim. Second, defendants note that none of the allegedly adverse actions occurred under circumstances giving rise to an inference of discrimination. Third, defendants argue that plaintiff does not allege facts suggesting that plaintiff's age was a "but-for" cause of any adverse employment actions. Fourth, defendants argue that plaintiff's Title VII and ADEA claims against Bonnano and Pynn must be dismissed because Title VII and the ADEA do not provide for individual liability. Fifth, defendants argue that the Complaint fails to adequately allege a hostile work environment. Sixth and finally, defendants argue that the Complaint fails to state a cause of action for retaliation.

Point V argues that plaintiff's state-law claims for intentional infliction of emotional distress and negligent supervision are time-barred and fail to state a claim. First, defendants argue that plaintiff's notice of claim was not filed until June 1, 2007, and did not place the City

on notice of the claims plaintiff intended to file. Second, defendants argue that the Complaint does not allege facts sufficient to make out an emotional distress claim or a negligent supervision claim. Point VI relates to damages, arguing that punitive damages are not available against municipal defendants.

## DISCUSSION

### Legal Standard

Although plaintiff has not filed any papers in opposition to the Instant motion, the Court is nevertheless required to review the merits of the defendants' arguments. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."); *Foster v. Phillips*, No. 03 CIV 3629 MBM DF, 2005 WL 2978686, at *3 (S.D.N.Y. Nov. 7, 2005) ("where a Rule 12(b) motion has not been opposed, this Court must review the merits of the motion and determine whether the movant has carried its burden."). In considering a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a party has not "nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* Even if the complaint does not plausibly state a claim to relief, a court

must grant leave to amend the complaint if a liberal reading of the pleading "gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

In this case, defendants not only move to dismiss some claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, but also move, in the alternative, for summary judgment on other claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. In a motion pursuant to Rule 56, summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotation marks omitted).

Upon a motion for summary judgment, the moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, "the non-movant must set forth specific facts showing that there is a genuine issue for trial." *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citation omitted). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Id.* at 121 (internal quotations and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks omitted) (brackets in original).

### Timeliness of the Title VII and ADEA Claims

In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) (governing Title VII claims); 29 U.S.C. § 626(e) (governing ADEA claims). In Point I, defendants argue that plaintiff's Title VII and ADEA claims are barred because plaintiff failed to meet this deadline. Although the Complaint alleges that plaintiff did not receive a right-to-sue letter until July 20, 2010, defendants have adduced proof that the EEOC issued a right-to-sue notice on December 31, 2007. Since this action was not commenced until October 20, 2010, defendants reason that plaintiff's Title VII and ADEA claims are time-barred.

There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice. *Tiberio v. Allergy Asthma Immunology*, 664 F.3d 35, 37 (2d Cir.

13

2011). In addition, courts normally assume that a mailed document is received three days after

its mailing. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996) (citing

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984)). Accordingly, the Court

presumes that the right-to-sue notice dated December 31, 2007, was mailed on that date and was

received three days later.

That presumption is not irrebutable. "The presumption may be rebutted by admissible

evidence that the document was not mailed, was received late, or was never received." *Isaacson

v. N.Y. Organ Donor Network*, 405 F. App'x 552, 553 (2d Cir. 2011) (summary order) (citing

*Sherlock*, 84 F.3d at 526). Under some circumstances, the mere denial of receipt of a document

may be insufficient to rebut the presumption. *See Meckel v. Cont'l Resources Co.*, 758 F.2d 811,

817 (2d Cir. 1985) (relying on New York law in holding that mere denial of receipt of a notice

does not rebut presumption of receipt which arises from proof that an office procedure followed

in a regular course of business required that the notice be properly addressed and mailed).

However, in the absence of evidence establishing adherence to an office mailing procedure or

other proof of mailing, courts in this district have held that a sworn affidavit denying receipt of a

right-to-sue notice is sufficient to create a genuine issue of material fact with respect to the

receipt of that notice. *See, e.g., Capobianco v. Sandow Media Corp.*, Nos. 11 Civ. 3162 (LAP),

11 Civ. 3163 (LAP), 2012 WL 4561761, at *3 (S.D.N.Y. Sept. 29, 2012) (a plaintiff's sworn

testimony that she did not receive a right-to-sue letter creates dispute of material fact that

precludes dismissal of an ADA claim on the ground that it was not timely filed); *Hilton v.

Bedford Paving, LCC*, 769 F. Supp. 2d 92, 99 (W.D.N.Y. 2010) (allowing a Title VII claim to

proceed where plaintiff and counsel both submitted sworn affidavits stating neither received the

right-to-sue letter and where defendant merely relied upon the presumption of receipt); *Greenidge v. Ben Hur Moving & Storage, Inc.*, No. 02 Civ. 1635 (ERK), 2002 WL 1796812, at *3 (E.D.N.Y. Aug. 6, 2002) ("[A]n affidavit by the claimant stating that she never received the right-to-sue letter sent by the EEOC may rebut the presumption of receipt.").

In this case, plaintiff has submitted a declaration (incorrectly labeled an "answer") in which she states under penalty of perjury that she received "only one 90 day letter" and that she provided that document to her attorney. Answer sworn Nov. 12, 2013, ¶ 2. That attorney then filed the Complaint, which unequivocally stated that "the EEOC issued a right-to-sue letter informing Plaintiff of her right to sue defendants in federal court" on July 20, 2010. Collectively, these documents constitute evidence that plaintiff never received a copy of the right-to-sue letter dated December 31, 2007. Moreover, this evidence is corroborated to some extent by the fact that the SDHR duplicated the efforts of the EEOC by investigating the same Charge, which suggests that the SDHR, too, may not have received a copy of the December 31, 2007, right-to-sue letter. This proof is sufficient to raise a genuine issue of material fact with respect to whether plaintiff ever received the December 31, 2007, right-to-sue letter, and precludes this Court from granting summary judgment on the ground that plaintiff's Title VII and ADEA claims were untimely filed.

### Administrative Exhaustion

The second and third points raised in Defendants' Memo relate to the administrative exhaustion requirements of Title VII and the ADEA. "Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Housing Auth.*, 458

F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5). Similarly, "[b]efore bringing a suit

under the ADEA, a plaintiff must file a timely complaint with the EEOC." *Ximines v. George*

*Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (citing 29 U.S.C. § 626(d)). The purpose

of the exhaustion requirement is to permit the EEOC or equivalent state agency to resolve the

complaint without litigation. *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985)

("[t]he purpose of the [ADEA] notice provision ... is to encourage settlement of discrimination

disputes through conciliation and voluntary compliance ..."); *Stewart v. U.S. Immigration and*

*Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985) ("the purpose of the [Title VII]

exhaustion requirement ... is to give the administrative agency the opportunity to investigate,

mediate, and take remedial action ....").

Since that purpose "would be defeated if a complainant could litigate a claim not

previously presented to and investigated by the EEOC," *Miller*, 755 F.2d at 26, a district court

can only "hear Title VII claims that either are included in an EEOC charge or are based on

conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the

EEOC charge." *Butts v. City of New York Dept. of Housing Pres. & Dev.*, 990 F.2d 1397, 1401

(2d Cir. 1993) (citing cases). Unexhausted claims are "reasonably related" where (1) "the

conduct complained of would fall within the 'scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination;'" (2) the plaintiff is "alleging

retaliation by an employer against an employee for filing an EEOC charge;" or (3) "a plaintiff

alleges further incidents of discrimination carried out in precisely the same manner alleged in the

EEOC charge." *Id.* at 1402-03 (quotation and other citations omitted). "In determining whether

claims are reasonably related, the focus should be on the factual allegations made in the [EEOC]

16

charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (brackets in original).

The time period for filing a charge of discrimination varies, depending on whether the individual files his charge directly with the EEOC or with a state or local agency. In New York, which has both state and local fair employment agencies, an individual who initially files a grievance with the state or local agency must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1). If a charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.*

A discrete retaliatory or discriminatory act occurs on the day that it happens. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). A plaintiff must, therefore, file a Charge of Discrimination within either 180 or 300 days of the date of those discrete retaliatory or discriminatory acts or lose the ability to recover for them. *Id.* "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

In contrast, hostile work environment claims involve repeated conduct which occurs over a series of days or perhaps years. *Id.* at 115. This sort of "unlawful employment practice ... cannot be said to occur on any particular day." *Id.* Accordingly, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Although exhaustion of administrative remedies is a precondition to filing an action in federal court under Title VII or the ADEA, it is not a jurisdictional requirement. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Rather, it is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Id.* at 767. However, administrative exhaustion remains "an essential element of Title VII's statutory scheme, ... and one with which defendants are entitled to insist that plaintiffs comply." *Id.* at 768 (internal quotations and citation omitted).

In this case, defendants advance two arguments relating to the administrative exhaustion requirement. In Point II, defendants argue that Title VII and ADEA claims arising from incidents which occurred more than 300 days prior to the filing of the Charge of Discrimination with the EEOC must be dismissed as time-barred. In Point III, defendants argue that this Court does not have subject-matter jurisdiction over Title VII or ADEA claims alleging hostile work environment or retaliation because those claims were not raised in the Charge filed with the EEOC.

With respect to Point II, the Complaint alleges that plaintiff filed a Charge of Discrimination with the EEOC on or about May 9, 2007. Complaint, ¶ 3. Documents filed by defendants in support of the instant motion cast doubt on the accuracy of this allegation, in that they indicate that plaintiff filed a charge of discrimination with both the EEOC and the SDHR on June 11, 2007. *See* Yi Declaration, Exs. B & E. However, it is unnecessary for purposes of Point II to determine exactly when and where the Charge of Discrimination was filed. Defendants' argument assumes the facts in the manner most favorable to plaintiff: that the Charge was filed with the SDHR on May 9, 2007. Defendants then argue that claims which

occurred before July 13, 2006—i.e., 300 days prior to May 9, 2007—are time-barred. *See* Defendants' Memo, p. 9.

The Complaint alleges several discrete acts of discrimination and/or retaliation, which can be grouped into four categories. First, the complaint alleges a conversation which took place shortly before plaintiff started work in September 2004, in which defendant Bonnano unsuccessfully attempted to discourage plaintiff from accepting the position as a lead paint inspector. Second, the pleading alleges acts which took place on or around June 8, 2006, after plaintiff reported to Pynn that her co-worker, Roberts, was shopping during work hours. Third, the Complaint alleges acts which took place in March 2007 and on April 3, 2007, in connection with Kogan's accusation that plaintiff was improperly powering down the computer they shared. Finally, the pleading alleges acts in connection with disciplinary proceedings initiated in April 2007.

To the extent that the Complaint is claiming that acts in the first two categories constituted discrete acts of discrimination or retaliation in violation of Title VII or the ADEA, those claims are time barred. As defendants correctly note, plaintiff did not file a charge within 300 days after these acts occurred and does not allege a basis for equitable tolling of the 300-day limitations period. Accordingly, these discriminatory or retaliatory acts are not actionable. *See* *Morgan*, 536 U.S. at 110. In contrast, the acts in the latter two categories occurred within 300 days of the filing of the Charge and are not time-barred. These would be actionable to the extent that they are either raised in the Charge or reasonably related to acts that were raised in the Charge.

As defendants note in Point III, however, plaintiff's Charge related solely to the acts in the fourth category. The Charge made no mention of Kogan or the acts which allegedly occurred as a result of his computer-related complaints. In addition, the Charge did not allege retaliation or the creation of a hostile work environment. Rather, the Charge alleged only that HPD was fabricating disciplinary violations in an effort to terminate plaintiff, and that HPD wanted to terminate plaintiff because of her gender, race and age. Since these are the only claims included in the Charge which plaintiff filed with the EEOC, only these claims and any claim based on conduct 'reasonably related' to these claims are administratively exhausted. *Butts*, 990 F.2d at 1401. Other claims, including plaintiff's retaliation claims and hostile work environment claims, are not administratively exhausted and must be dismissed.

### *Failure to State a Claim*

Even if all of plaintiff's Title VII and ADEA claims were timely and administratively exhausted, they would still be dismissed for failure to state a claim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. To make out a prima facie Title VII discrimination claim, a plaintiff "must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but it must nevertheless comply with the plausibility standard set forth in *Twombly* and *Iqbal*. *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Swierkiewicz*,

534 U.S. at 510). Thus, Title VII discrimination claims which fail to plausibly allege that the plaintiff suffered an adverse employment action are subject to dismissal upon a motion to dismiss. *See, e.g., Chung v. City Univ. of New York*, --- F. App'x ---, No. 14-3611-CV, 2015 WL 1428192, at *2 (2d Cir. Mar. 31, 2015) (summary order).

The incidents in which Bonnano allegedly discouraged plaintiff from accepting the position as a lead-paint inspector; in which Pynn yelled at plaintiff for reporting Roberts' misconduct, and in which Bonnano credited Kogan's accusations and screamed at plaintiff for powering down a computer do not constitute adverse employment actions. For purposes of a Title VII discrimination claim by a person already employed, an adverse employment action is defined in our Circuit as a "materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). "Title VII ... does not set forth 'a general civility code for the American workplace,'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)), and does not require supervisors "to engage in unfailingly decorous or diplomatic conduct" or "empower courts to act as super-personnel departments, poised to question the reasonableness or fairness of every supervisor-employee interaction." *Marcus v. Barilla America NY, Inc.*, 14 F. Supp. 3d 108, 114 (W.D.N.Y. 2014). Accordingly, "being yelled at, ... publicly reprimanded, and condescended to ... are not actionable via Title VII ..." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 885 (S.D.N.Y. 2013).

In contrast, the allegations that disciplinary proceedings were commenced against plaintiff on contrived charges could make out an adverse employment action. "Being forced to

defend against disciplinary charges may constitute an adverse employment action." *Rolon v. Ward*, 345 F. App'x 608, 610 (2d Cir. 2009) (summary order) (citing *Albert v. City of Hartford*, 529 F. Supp. 2d 311, 335 (D.Conn. 2007)). However, "mistreatment at work ... is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Thus, to state a claim, a plaintiff must at a minimum allege facts that suggest that the complained-of conduct was motived by discriminatory animus. *Patane v. Clark*, 508 F.3d 106, 112 & n. 3 (2d Cir. 2007) (explaining that although a plaintiff need not plead a prima facie case to survive a motion to dismiss, dismissal is nevertheless appropriate where the plaintiff "failed to allege even the basic elements of a discriminatory action claim."); *see also Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir.2012) (summary order) (describing post-*Iqbal* pleading standards in Title VII actions).

In this case, plaintiff's pleadings do not allege facts to suggest that the disciplinary charges were motivated by discriminatory animus. Rather, the Complaint alleges that the charge against which plaintiff was ultimately forced to defend—the allegation that plaintiff used profane language toward co-workers—was fabricated by Roberts, the co-worker who plaintiff had reported for shopping during work hours. In addition, the Complaint implies that Pynn, the supervisor who served the initial disciplinary charge on plaintiff, was supportive of Roberts, who Pynn considered his "best man." These facts strongly suggest that the allegedly false charges were the result of personal animus between Roberts and plaintiff, and that Pynn was favorably disposed toward Roberts and inclined to credit his claims. In contrast, the Complaint contains no factual allegations that suggest the disciplinary charges arose from discriminatory animus. Accordingly, the allegations relating to the disciplinary charges do not state a Title VII claim.

*See Wilson v. Family Dollar Stores of N.Y., Inc.*, No. CV-06-639 (DGT), 2008 WL 4426957, at

*8 (E.D.N.Y. Sept. 25, 2008) (behavior which "merely indicates personal enmity rather than

discrimination ... does not violate Title VII.")

### ADEA and Retaliation

The Complaint also fails to state a claim of age discrimination or retaliation. To establish

a prima facie case of discrimination under the ADEA, a plaintiff must show "(1) that she was

within the protected age group, (2) that she was qualified for the position, (3) that she

experienced [an] adverse employment action, and (4) that such action occurred under

circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways

Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Similarly, to establish a prima facie case of retaliation, a

plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the

protected activity; (3) an adverse employment action; and (4) a causal connection between the

protected activity and the adverse employment action." *See Hicks v. Baines*, 593 F.3d 159, 164

(2d Cir. 2010) (internal quotation marks omitted). As discussed above, the incidents in which

Bonnano credited Kogan's accusations and screamed at plaintiff for powering down a computer

do not constitute adverse employment actions, and the Complaint does not allege facts

suggesting that the disciplinary charges were motivated by discriminatory animus or a desire to

retaliate against plaintiff for engaging in protected activity.

### Hostile Work Environment

As noted above, plaintiff's Charge pertained solely to the disciplinary proceedings, and

did not allege a hostile work environment. Even if it had, the Complaint fails to state a claim for

hostile work environment. "A hostile work environment exists under Title VII where the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Moll v. Telesector Res. Group, Inc.*, 760 F.3d 198, 203 (2d Cir. 2014).[1] To state a claim based on a hostile work environment, a plaintiff is required "to plead facts that demonstrate '(1) that [the] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [the] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Chick v. County of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013) (summary order) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

"There is no 'mathematically precise test' ... for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22-23 (1993)). "[C]ourts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "Facially neutral incidents may be included ... among the 'totality of the circumstances' ... , so long as a reasonable fact-finder could conclude that they were, in fact, based on [a protected characteristic]." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002).

---

[1]The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

"[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo*, 770 F.3d at 114 (quoting *Harris*, 510 U.S. at 21-22). "Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).

In this case, the Complaint alleges four incidents over a two and one-half year period, none of which could be characterized as severe and most of which had little or nothing to do with plaintiff's protected characteristics. First, just before plaintiff transferred to the Hooper Street office in September 2004, Bonnano advised plaintiff not to accept the position of lead-paint inspector because it required her to carry ladders. Although plaintiff perceived this comment as "impl[ying] that ... a middle-aged woman ... would not be able to perform her new job on account of her age and/or sex," Complaint, ¶ 15, the Complaint does not allege that Bonnano made explicit reference to plaintiff's gender or age. Morever, the comments did not express hostility towards women or elderly workers, and plaintiff does not allege that Bonnano made any other, similar comments thereafter.

Indeed, the Complaint does not allege that any further incidents occurred until June 2006, approximately 21 months later. Although Pynn summoned plaintiff to the men's locker room in order to yell at her, there is nothing to suggest that Pynn's hostility toward plaintiff had anything to do with her protected characteristics. Pynn made no comments about plaintiff's sex, race, or age, but made it clear that he was infuriated about her actions in reporting Roberts' misconduct.

Similarly, there is nothing to suggest that Bonnano's decision to credit Kogan's accusations and to yell at plaintiff for powering down the computer had anything to do with plaintiff's race, gender or age. Although plaintiff alleges that she was "singled out for 'improper' computer use ... because she was an older African-American female," Complaint, ¶ 24, her pleading does not allege any facts that would support this speculation. Moreover, while Bonnano may have unjustly screamed at plaintiff in a public manner, she was not subjected to any adverse employment actions as a result of Kogan's accusations. Furthermore, the fact that she was subsequently reassigned to share a computer with another African-American employee does not justify the inference that Bonnano's conduct was racially motivated.

As noted above, the only conduct alleged in the complaint that rose to the level of an adverse employment action related to the disciplinary proceedings which were commenced in April 2007. Those proceedings were apparently based on Roberts' allegations that plaintiff had used profanity in conversations with co-workers. Again, there is nothing to suggest that those disciplinary proceedings were motivated by discriminatory animus, rather than the personal animus that Roberts and, perhaps, Pynn felt toward plaintiff because of the June 2006 incident.

Aside from these four incidents, the only other factual allegations which plaintiff makes in support of her hostile work environment claim relate to the lack of a female locker room. However, the Complaint does not allege that she and the other women had no place to change or that the lack of a locker room affected her ability to perform her job. *See, e.g., Dauer v. Verizon Commc'ns Inc.*, No. 03 Civ. 05047 (PGG), 2009 WL 186199, at *7 (S.D.N.Y. Jan. 26, 2009) (holding that proof of a failure to provide separate bathroom facilities for women, standing alone, was insufficient to make out a hostile work environment claim.)

In sum, the Complaint does not allege facts that suggest that the Hooper Street office "was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [plaintiff's] work environment." *See Chick*, 546 F. App'x at 59. To the contrary, the Complaint alleges a few isolated incidents, only some of which were even arguably discriminatory in nature. Accordingly, the Complaint fails to state hostile work environment claims under Title VII or the ADEA.

### State-Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim ... [if] ... the district court has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Although "[t]he exercise of supplemental jurisdiction is within the sound discretion of the district court," *Lundy v. Catholic Health Sys. of Long Isl. Inc.*, 711 F.3d 106, 117 (2d Cir. 2013), the Second Circuit has repeatedly stated that "if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir.2008)). This rule is consonant with the Supreme Court's observation that when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

For the reasons stated above, plaintiff's Title VII and ADEA claims, set forth in Counts I through III of the Complaint, are dismissed. The remaining three counts allege state-law claims: a claim pursuant to the NYCHRL, a claim for intentional infliction of emotional distress, and a

claim for negligent supervision.  Since all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over these three counts.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss or, in the alternative, for summary judgment is granted is granted with respect to the Title VII and ADEA claims set forth in Counts I, II and III of the Complaint. The Court declines to exercise supplemental jurisdiction with respect to the state-law claims set forth in Counts IV, V and VI, and those claims are dismissed without prejudice.  The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: June 22, 2015
      Brooklyn, New York